IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| DELTA CONSULTING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-403 |
| HMM HOSPITALITY, LLC, | ) ) ) | |
| Defendant. | ) | |

## DELTA CONSULTING GROUP, INC.'S MEMORANDUM IN RESPONSE TO HMM HOSPITALITY, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE

### FACTUAL BACKGROUND

This case arises out of Defendant HMM Hospitality, LLC's (hereinafter "HMM") failure to pay expert fees incurred in a construction dispute. In September 2016, defendant HMM entered into a contract to with W. M. Jordan Company, Inc. (hereinafter "WMJ") to construct a new Springhill Suites hotel in Fayetteveille, North Carolina. Compl. ¶ 9, ECF No. 1. A dispute regarding the construction developed. *Id.* at ¶ 10. HMM retained Steele B. Windle, III as its attorney to represent it in regards to the construction disputes. *Id.* at ¶ 11. Mr. Windle then contacted, Mark Dungan, a Virginia resident who is an Executive Vice President of Delta Consulting Group, Inc., a Virginia corporation (hereinafter "Delta") for the provision of a forensic analysis of construction delays. *Id.*

At that time, Delta sent an engagement letter to HMM's attorney-at-law, Windle. *Id.* This agreement was never executed. *Id.* at ¶ 17. Therefore, fees from this time period, before an executed agreement, are not sought. *Id.* However, the invoice from this time period was sent to Windle. Exhibit A, November 30, 2018 invoice. This invoice, and all subsequent invoices, directed that payment be made to Delta Consulting Group, Inc.'s Accounting Department located in Woodbridge, Virginia. *Id.*

On January 17, 2019, WMJ filed suit against HMM. Compl. ¶ 14, ECF No. 1. Subsequently, Delta sent another engagement letter to Windle as HMM's agent. *Id.* This agreement was executed by Windle as HMM's attorney on March 5, 2019. *Id.* Delta then undertook to provide services to HMM.

Delta's first contact with HMM directly via e-mail, took place on May 5, 2019. Exhibit B, May 9, 2019 E-mail. On that date, Naynesh Metha, who is a member and manager of HMM, sent directly to Mark Dungan of Delta an e-mail listing responses to questions posed in Delta's preliminary report. *Id.* Mark Dungan was located in Virginia at the time the e-mail was sent. *See* Exhibit C, Decl. of Mark Dungan.

HMM through Naynesh Metha, and Delta, through Mark Dungan and Bryan Furniss, continued to routinely communicate via e-mail. Again, at all relevant times, Delta was located in and received said e-mails in Virginia. *See* Exhibit C, Decl. of Mark Dungan. On November 26, 2019, Windle e-mailed Mark Dungan and told Delta to "contact Naynesh and Manish to work out these issues with the outstanding invoices. There is no need for me to be in the middle of those conversations." Exhibit D,

September 26, 2019 E-mail. Thereafter, Delta dealt directly with HMM regarding outstanding invoices. HMM paid several such invoices directly to Delta in Virginia. *See* Exhibit C, Decl. of Mark Dungan.

Despite defendant's member-manager, Naynesh Mehta's statement in his affidavit that they were never asked to sign an engagement letter, HMM was asked *directly* via e-mail on April 1, 2020 to sign said agreement. *See* Exhibit E, April 1, 2020 E-mail. Furthermore, HMM's contention to never have seen the November 16, 2018 engagement letter is without merit. *See* Aff. of Naynesh Mehta ¶ 17, ECF No. 10-1. On August 5, 2020, Naynesh sent an e-mail directly to Mark Dungan of Delta stating he did not understand how the "project cost can increase form [sic] the estimate that you provided to us on November 2019." Exhibit F, August 5, 2020 E-mail. Thus, HMM clearly was aware of the engagement letter from November 2019 and the proposed budgets it contained. Likewise, HMM was aware of the March 19, 2020 engagement as Naynesh Mehta was sent it directly and asked to sign in on April 1, 2020. *See* Exhibit E, April 1, 2020 E-mail.

All such engagement letters from Delta to HMM specifically stated that HMM would be responsible for paying all such invoices. *See* Exhibit G, November 16, 2018 Engagement Letter; Exhibit H, March 4, 2019 Engagement Letter; and Exhibit I, March 19, 2020 Engagement Letter. Furthermore, each of these engagement letters asked that the executed copy be forwarded to Delta's "Virginia office location." *Id.*

3

Invoices, as previously mentioned, were the direct responsibility of HMM and were to be paid directly by them. *See* Exhibit G, November 16, 2018 Engagement Letter; Exhibit H, March 4, 2019 Engagement Letter; and Exhibit I, March 19, 2020 Engagement Letter. Each of the invoices for HMM directed that the payment be made to Delta's accounting department, located in Woodbridge, Virginia. Exhibit A, November 30, 2018 invoice. HMM sent several payments directly to Delta in Woodbridge, Virginia. *See* Exhibit L, Checks from HMM.

Finally, the reports which were authored by Delta, which were used by HMM in their lawsuit with WMJ, were authored and signed by Mark Dungan. *See* Exhibit J, May 8, 2020 Report; and Exhibit K, June 19, 2020 Report. Again, Mark Dungan resides in Virginia and is based out of Delta's Woodbridge, Virginia office. The majority of said report was authored in Virginia by Mr. Dungan. Exhibit C, Decl. of Mark Dungan. In fact, the reports state that Delta Consulting Group, Inc. is located in Virginia. *See* Exhibit J, May 8, 2020 Report; and Exhibit K, June 19, 2020 Report.

## STANDARD OF REVIEW

The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction. *Id.* (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). A court

must also "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citing Combs, 886 F.2d at 676).

## ARGUMENT

I. **The Eastern District of Virginia has proper personal jurisdiction over defendant.**

"A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long arm statute provides "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(1). Since "Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp.*, 561 F.3d at 277. To satisfy the due process constitutional inquiry, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

"The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The Fourth Circuit uses a three part test to determine if personal jurisdiction may be asserted: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citations and quotations omitted). Defendant seems to concede the second prong of the test in their brief. Therefore, only the first and third prong will be analyzed.

### A. HMM purposefully availed itself of the privilege of conducting activities in Virginia.

HMM knew it was transacting business with a Virginia corporation. HMM contacted Delta through their attorney and agent Windle. It was HMM who initially set in motion the relationship which gives rise to this lawsuit. Furthermore, HMM's attorney and agent entered into a contract with Delta, on HMM's behalf. Finally, HMM continued to have direct communications with Delta in Virginia and even sent payments to Virginia.

### 1. HMM contacted Delta, a Virginia Corporation, by and through their agent.

It is standard that "the legal principles of general agency law relating to the apparent authority of agents to bind principals generally apply to an attorney/client relationship." *Fox Grocery Co. v. Mineral Labs, Inc.*, No. 91-1643, 1992 U.S. App. LEXIS 8619, at *6 (4th Cir. Apr. 27, 1992). It is clear that Windle was acting as HMM's agent with apparent authority when he contacted and retained the services of Delta.

"Apparent authority is the power of an agent to bind a principal to a transaction with a third party in accordance with the principal's manifestations to the third party." *Id.* (citing Restatement (Second) of Agency § 8 (1958)). "Apparent authority is created by a principal's 'written or spoken words or any other conduct . . . which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.'" *Id.* (quoting § Restatement (Second) of Agency § 27 (1958)).

The Fourth Circuit analyzed the apparent authority of an attorney in *Schafer* under North Carolina law. *Schafer v. Barrier Island Station, Inc.*, 946 F.2d 1075 (4th Cir. 1991). The case dealt with whether a letter from an attorney for the defendant would satisfy the statute of frauds for a land purchase. *Id.* at 1076–77. The Fourth Circuit found the attorney was not acting with apparent authority because "conduct, statements or other manifestations directed by [defendants] to plaintiffs that [the attorney] had more authority than was implied from the customary attorney-client relationship." *Id.* at 1080. Likewise, Virginia law provides that "[o]ne who permits

7

another to hold himself out as agent and appears to acquiesce in that assumption of authority is bound thereby." *Title Ins. Co. v. Howell*, 158 Va. 713, 724, 164 S.E. 387, 391 (1932).

Here, HMM's attorney, Windle, executed the engagement letter with Delta. *See* Exhibit H, March 4, 2019 Engagement Letter. HMM continued to correspond and interact with Delta after this engagement. HMM never objected to Delta's involvement in their case. Furthermore, HMM undertook to pay several invoices directly to Delta after the engagement by Windle. *See* Exhibit C, Decl. of Mark Dungan. Furthermore, in Mark Dungan's experience with both consulting in litigation and in dealing with Windle specifically, he understood Windle to be acting for his client, HMM. *Id.*

Virginia's long arm statute provides that personal jurisdiction may be exercised "over a person, who acts directly or *by an agent*, as to a cause of action arising from the person's transacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1(A) (emphasis added). As previously discussed, it is clear that Windle was, as attorney for HMM, acting as their agent. Furthermore, he had apparent authority by which to act as their agent. The Fourth Circuit has found that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990) (quoting *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 535, 238 S.E.2d 800, 802 (1977)). In this

case, Windle on behalf of HMM, and with its approval, reached into Virginia and entered into a contract with a Virginia corporation.

### 2. HMM communicated and transacted business in Virginia

In *Peanut Corp.,* the Fourth Circuit found that a purchaser's modification letter sent to a seller in Virginia, along with "telephonic negotiations" and "numerous written communiques between the parties" was sufficient to find personal jurisdiction in Virginia. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982). Likewise, the Fourth Circuit has found that a lawyer out of California would be subject to personal jurisdiction in Virginia when he contacted a Virginia lawyer, who performed all of his services in Virginia. *English & Smith*, 901 F.2d at 39. The court found "the parties exchanged numerous telephone calls and written communications." *Id.* Likewise, here, there are numerous e-mails sent from HMM directly to Delta. Most of these e-mails were directed to Mark Dungan who is located in Virginia. Exhibit C, Decl. of Mark Dungan; *see also* Exhibit B, May 2, 2019 E-mail, Exhibit D, September 26, 2019 E-mail, Exhibit E, April 1, 2020 E-mail, Exhibit F, August 5, 2020 E-mail.

Likewise, in *Initiatives*, this Court found that a Korean defendant was not subject to personal jurisdiction when the plaintiff reached out and solicited business from the defendant in Korea. *Initiatives, Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 479 (E.D. Va. 1997). Here, Delta did not reach out to HMM to solicit business. It was instead, HMM, through their attorney and agent, Windle who solicited business from Delta in Virginia. Exhibit C, Decl. of Mark Dungan.

HMM was likewise aware it was dealing with a Virginia entity. All invoices from Delta directed HMM to make payments to its Woodbridge, Virginia address. Exhibit A, November 30, 2018 invoice. Furthermore, HMM sent several payments to this Virginia address. Exhibit C, Decl. of Mark Dungan; Exhibit L, Checks from HMM. These payments were made directly from HMM and sent to Delta's Woodbridge, Virginia office. Exhibit L, Checks from HMM. Both expert reports from Delta which were read by HMM included their Virginia address on them. *See* Exhibit J, May 8, 2020 Report; and Exhibit K, June 19, 2020 Report.

HMM interjected itself into Virginia by sending payments to Virginia for services rendered in Virginia, provided by a Virginia corporation. Exhibit C, Decl. of Mark Dungan; Exhibit L, Checks from HMM. These payments were sent directly to Delta's Woodbridge, Virginia office and came directly from HMM. Exhibit L, Checks from HMM. Making payments to Virginia or failing to make said payments, is sufficient to give a court personal jurisdiction over a defendant. *See Glumina Bank v. D.C. Diamond Corp.*, 259 Va. 312, 317, 527 S.E.2d 775, 777 (2000) (finding personal jurisdiction from the defendant transferring funds to the plaintiff's Virginia bank account).

Finally, here, there is a "purposeful direction of activities toward the forum." *English & Smith*, 901 F.2d at 39. HMM, through their agent and attorney, Windle, contacted Delta in Virginia. Exhibit C, Decl. of Mark Dungan. HMM "carried on a continuing relationship with" Delta in Virginia as evident by the e-mails exchanged

between the two parties. *English & Smith*, 901 F.2d at 40. Finally, a contract was entered into by HMM with Delta in Virginia. This case is similar to *English & Smith*, where there was no in-person contact in Virginia by the defendants. Nonetheless, the Fourth Circuit found sufficient contacts for the Eastern District of Virginia to assert jurisdiction. *Id.*

### B. The exercise by this Court of personal jurisdiction over HMM would be constitutionally reasonable.

For a federal court to have personal jurisdiction over a party, not only must the state's long arm statute confer personal jurisdiction, the court must also determine that exercising personal jurisdiction would not violate due process. *ALS Scan, Inc.*, 293 F.3d at 712. A federal court must find the defendant has sufficient "minimum contacts" with Virginia "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158 (internal citations omitted). "The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process." *English & Smith*, 901 F.2d at 39. Importantly, "[j]urisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State." *Burger King Corp.*, 471 U.S. at 476, 105 S. Ct. at 2184. "[D]ue process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction." *Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 398 (E.D. Va. 1991) (quoting *In re August*, 17 Bankr. 628, 630 (Bankr. E.D. Va. 1982)).

This prong of the Fourth Circuit test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs Corp.*, 561 F.3d at 279. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*

HMM has not presented any evidence or argument how they would be burdened by litigating in Virginia. Even if HMM is slightly burdened by having to litigate in Virginia, "its amenability to suit in the Commonwealth nevertheless comports with the requirements of due process." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009); *see also Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."). Furthermore, HMM contacted Delta through their agent and attorney Windle. "Defendant['s] connection to the Commonwealth is neither fortuitous, random, unknown to them, nor the result of another party's unilateral activity." *Cook v. McQuate*, Civil Action No. 7:15-cv-456, 2016 U.S. Dist. LEXIS 135676, at *16 (W.D. Va. Aug. 18, 2016); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 784 (D. Md. 2000) ("A defendant has fair warning that he might be

12

subject to a forum's jurisdiction if he purposefully directs his activities at forum residents and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal citations and quotations omitted).

Next, "Virginia has an interest in resolving a case that involves substantial losses incurred by a Virginia entity." *Evolved Karomac Vision Corp. v. Majority Holdings Int'l B.T.*, LLC, No. 1:19-cv-269-TSE-MSN, 2020 U.S. Dist. LEXIS 29980, at *9 (E.D. Va. Jan. 29, 2020). Likewise, "Virginia has a valid interest in the resolution of the grievances of its citizens and businesses." *CFA Inst.*, 551 F.3d at 297.

Delta has a strong interest in having its case litigated in Virginia as they are a Virginia company. Delta's principal place of business is in Virginia, in this judicial district. Importantly, Delta "chose to bring this suit in Virginia and a plaintiff's choice of forum generally is entitled to substantial weight." *5EI, LLC v. Take Action Media, Inc.*, No. 1:12cv492 (JCC/TRJ), 2012 U.S. Dist. LEXIS 132443, at *22 (E.D. Va. Sep. 17, 2012) (citations and internal quotations omitted).

Unlike *Superfos*, there is more than "a simple connection" with a Virginia Corporation. *Superfos Invest., Ltd.*, 774 F. Supp. at 398. Instead, HMM sent payments directly into Virginia to a Virginia Corporation. *See* Exhibit L, Checks from HMM. Furthermore, all reports were authored in Virginia. *See* Exhibit C, Decl. of Mark Dungan; Exhibit J, May 8, 2020 Report; and Exhibit K, June 19, 2020 Report. There were many e-mails also sent directly between parties from HMM and Delta. *See e.g.* Exhibit B, May 2, 2019 E-mail; Exhibit D, September 26, 2019 E-mail; Exhibit E, April

13

1, 2020 E-mail, and Exhibit F, August 5, 2020 E-mail. Given the facts, HMM should have reasonably expected to be hauled into court in Virginia. This Court asserting personal jurisdiction over HMM "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316 (internal quotation omitted).

## II. Venue is proper in the Eastern District of Virginia.

Federal venue is controlled by 28 U.S.C. § 1391(b)(2) which states that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

In *Mitrano*, an attorney filed a lawsuit to collect fees owed from his former client who was located in Massachusetts. *Mitrano v. Hawes*, 377 F.3d 402, 404 (4th Cir. 2004). The attorney had originally resided in New Hampshire but moved to Virginia prior to filing the lawsuit on behalf of the client. *Id.* Much of the work performed by the attorney on the prior lawsuit, was done in Virginia. *Id.* The Fourth Circuit found that § 1391(b)(2) allowed venue to be proper in more than one judicial district. *Id.* at 405. Furthermore, a Court should look to "the entire sequence of events underlying the claim. *Id.* (citing *Uffner v. La Reunion Francaise, S. A.*, 244 F.3d 38, 42 (1st Cir. 2001)). The Court then went on to find the attorney's work which "created his entitlement to the payment he now seeks." *Mitrano*, 377 F.3d at 406. Thus, the amount of work performed in the Eastern District of Virginia alone would likely create venue there. *Id.*

In the case at bar, it was Delta's work for HMM which entitles them to payment and serves as the basis for our claim. Like *Mitrano*, a substantial part of Delta's work was performed in the Eastern District at their main offices located in Woodbridge, Virginia. *See* Exhibit C, Decl. of Mark Dungan.

DELTA CONSULTING GROUP, INC.

By: /s
    Of Counsel

Melissa W. Robinson (VSB No. 29065)
Johneal M. White (VSB No. 74251)
Hunter D. Weikel (VSB No. 96024)
GLENN ROBINSON CATHEY MEMMER & SKAFF PLC
400 Salem Avenue, S.W. Suite 100
Roanoke, Virginia 24016
MRobinson@glennrob.com
JWhite@glennrob.com
HWeikel@glennrob.com
(540) 767-2200 – Phone
(540) 767-2220 – Fax
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/EMC system, which will send a notification of such filing (NEF) to:

> William M. Cusmano (VSB No. 26713)
> WILLIAM M. CUSMANO, P.C.
> 3800 Fairfax Drive, Suite 7
> Arlington, VA 22203
> wcusmano@aol.com
> (703) 527-1775– Phone
> (703) 524-7610 – Fax
> *Counsel for Defendant*

/s_____

> Melissa W. Robinson (VSB No. 29065)
> Johneal M. White (VSB No. 74251)
> Hunter D. Weikel (VSB No. 96024)
> GLENN ROBINSON CATHEY MEMMER & SKAFF PLC
> 400 Salem Avenue, S.W. Suite 100
> Roanoke, Virginia  24016
> MRobinson@glennrob.com
> JWhite@glennrob.com
> HWeikel@glennrob.com
> (540) 767-2200 – Phone
> (540) 767-2220 – Fax
> *Counsel for Plaintiff*